NONPROFIT LEGAL SERVICES OF UTAH
Aaron C. Garrett, #12519
Nathan R. Garcia, #13706
Mary Dewey, #15978
623 East 2100 South, Suite B1
Salt Lake City, Utah 84106
Tel: (385) 419-4111
Fax: (801) 401-3504
aaron@nonprofitlegalservices.com
nathan@nonprofitlegalservices.com
mdewey@nonprofitlegalservices.com
*Attorneys for Plaintiff Thaer Mahdi*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **THAER MAHDI**,<br><br>        Plaintiff,<br><br>v.<br><br>**SALT LAKE CITY POLICE DEPARTMENT**, a department of Salt Lake City Corporation; **UNIFIED POLICE DEPARTMENT**, a department of Salt Lake County; and **UTAH HIGHWAY PATROL**, a department of the State of Utah,<br><br>        Defendants. | **COMPLAINT**<br><br>Case No. _____<br><br>Judge _____<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Thaer Mahdi, by and through undersigned counsel, hereby complains against Defendants Salt Lake City Police Department, Unified Police Department, and the Utah Highway Patrol (collectively, "Defendants") and requests relief as follows:

## PRELIMINARY STATEMENT

1. This action under 42 U.S.C. § 1983 seeks declaratory relief for improper interference with the constitutional rights of the Plaintiff, Thaer Mahdi. The plaintiff seeks monetary damages. Plaintiff seeks attorney fees and costs under 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Thaer Mahdi ("Mr. Mahdi") is an individual who resides within Salt Lake County, Utah.

3. Defendant Salt Lake City Police Department ("SLCPD"), is a department or division of Salt Lake City Corporation, with its principal place of business in Salt Lake County, Utah.

4. Defendant Unified Police Department ("UPD"), is a department or division of Salt Lake County, with its principal place of business in Salt Lake County, Utah.

5. Defendant Utah Highway Patrol ("UHP"), is a department or division of the Utah Department of Public Safety, State of Utah, with its principal place of business in Salt Lake County, Utah.

6. Jurisdiction is proper in this Court under 42 U.S.C. §§ 1983, 1988 as well as 28 U.S.C. § 1343, and arises in order to enforce provisions of the United States Constitution. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

7. Venue is proper in the Central Division of the United States District Court for the District of Utah because the misconduct of Defendants occurred in Salt Lake County, State of Utah, and in the Central Division of this Court.  Further, Defendants reside in that division and in Salt Lake County, Utah.  Defendants' places of business are in Salt Lake County, State of Utah.

8. At all times pertinent to this action, Defendants were acting under color of state law, with powers vested in them by the State of Utah, Salt Lake City Corporation, and/or Salt Lake County and within the scope of their authority granted by Utah State law and/or Salt Lake City/County ordinances, policies, and practices.

## GENERAL ALLEGATIONS

9. Mr. Mahdi is an Iraq-born U.S. citizen who immigrated to this country with his family in February 2009.  He has been a tailor for over 40 years, and at the times relevant to this Complaint was the operator of a tailoring business called Princess Alterations, located at 3339 State Street in Salt Lake City, Utah, which he ran with his wife.

10. On April 8, 2019, Mr. Mahdi was working in his shop like he did nearly every day when all of a sudden a white pickup truck driven by a man named Harold Vincent Robinson ("Mr. Robinson") crashed into his store.  Mr. Robinson had just led police on a car chase throughout the greater Salt Lake City area.

11. Immediately after the crash, an incredible hail of gunfire engulfed Mr. Mahdi and his establishment.  Dozens if not hundreds of rounds entered through his building and into his shop.  His shop was torn to shreds.  His inventory, machinery, client property, and business was destroyed.  It is nothing short of a miracle that Mr. Mahdi himself was not hit by a bullet.

12. According to public reports, Mr. Mahdi would later learn that at least 15 officers, sheriff deputies, and/or patrolmen employed by the Defendants had collectively fired hundreds of rounds at Mr. Robinson and his vehicle, a substantial portion of which penetrated Mr. Mahdi's store.

13. It is apparent from video footage of the incident posted to social media that the officers of Defendants made no efforts to subdue Mr. Robinson or take any other action other than to immediately begin firing their weapons collectively in a massive and unnecessary show of force. Indeed, the video footage demonstrates that officers began firing within 1-2 seconds upon arriving on the scene and continued to fire indiscriminately for approximately 20 seconds.

14. It was easily foreseeable that one or more individuals would be inside Princess Alterations at the time of this incident. The event took place on regular work day (a Monday), during normal business hours (around 11:00 a.m.), and there were obvious indicia that Princess Alterations was open for business such as a light up "Open" sign, other light up signage, the blinds for the windows were open, and the lights were turned on in the business.

15. In other words, it should have been obvious to Defendants and its officers that Mr. Mahdi was within the zone of danger when they unleashed the barrage of gunfire that ultimately changed Mr. Mahdi's life forever.

16. Clearly, no regard was made for anyone who may have been inside the building and the "groupthink" exhibited by the large number of officers who unloaded their clips of bullets into Mr. Mahdi's shop without a second thought should shock the conscience of any citizen of Salt Lake County, the State of Utah, and this Court.

17. Under these circumstances, the fusillade of bullets fired by the Defendants is sufficient to shock the conscience, and therefore violative of his 14th Amendment due process right to be free from the use of excessive force by government authorities.

18. The policies or customs of the Defendants was the moving force behind the deprivation of Mr. Mahdi's constitutional rights alleged above.

19. It is a modern day reality that criminals will lead police officers on car chases, which may often cross between multiple jurisdictions and involve multiple different policing authorities through public places, residential neighborhoods, and businesses.

20. Upon information and belief, despite the realistic probability of these types of incidents, and the need for appropriate use of force to avoid injuring or harming innocent bystanders, Defendants did not train, re-train, or otherwise address the use of appropriate force with their officers in these types of incidents.

21. Furthermore, upon information and belief, Defendants have failed to train, re-train, or develop reasonable policies to govern these multiple jurisdiction incidents, to establish a chain of command to control the activities of officers at the conclusions of such events to avoid the indiscriminate firing by a multitude of officers from different jurisdictions, and to ensure that only appropriate, progressive force is used so that innocent bystanders are not injured in these events.

22. This failure to train, re-train, or establish reasonable and appropriate policies rises to the level of the adoption or ratification of a policy or custom within Defendants.

23. Defendants' failure to train, re-train, or establish reasonable and appropriate policies results from a deliberate indifference to the rights and possible injury of innocent bystanders such as Mr. Mahdi.

24. The fact that at least 15 different officers from at least 3 different policing authorities immediately began firing their weapons at Mr. Robinson and into Mr. Mahdi's business for approximately 20 seconds, resulting in hundreds of rounds being fired, makes it patently obvious that the required policies and training have not been developed and implemented, and that officers have not been trained and retrained on the progressive use of force necessary to avoid injuring innocent bystanders.

25. Although Mr. Mahdi was not himself struck by one of the dozens of bullets that entered his shop, this is not to say that he was uninjured. Since the incident, Mr. Mahdi has suffered from tremendous psychological distress. His world is shaken, he is a shell of himself, he cannot work or sleep, and these psychological issues are beginning to manifest themselves physically as well including in the form of a persistent, annoying, and entirely disruptive buzzing sound inside of his head.

26. The trauma he has suffered and the devastation of his business will force him into an early retirement. After the incident, he attempted many times to come to the shop and re-establish his business. He could never bring himself to cross beyond the threshold of the door.

27. The loss of his business has cost him hundreds of thousands of dollars in lost income, as he otherwise would have continued to work for many more years in the tailoring business he ran with his wife.

28. Mr. Mahdi also incurred losses related to expenses for the buildout of the building and the acquisition of equipment, to the extent it was not covered by insurance.

29. Furthermore, Mr. Mahdi moved to the United States in 2009 from Iraq, after surviving many wars in his home country, including death threats and assassination attempts from insurgents due to his work as a tailor for the United States military during the 2003-2005 time period. These recent incidents have brought all of that trauma to the fore once again.

30. Mr. Mahdi is receiving regular therapy from a therapist to help him deal with the incident and the associated trauma.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FOURTEENTH AMENDMENT

31. Mr. Mahdi incorporates by reference the preceding paragraphs as if they are repeated herein verbatim.

32. The conduct of the Defendants set forth above constitutes an infringement on Mr. Mahdi's right to be free from the use of excessive force as protected by the United States Constitution, Fourteenth Amendment.

33. Specifically, the conduct described above is so excessive that it shocks the conscience notwithstanding the difficult situation Defendants and its officers faced at the time.

34. Furthermore, the events transpired as the result of a policy or custom of Defendants, in that they failed to establish sufficient policies and train officers on the implementation thereof to avoid outcomes like those suffered by Mr. Mahdi, which results from

a deliberate indifference by Defendants to the rights and possible injury of innocent bystanders like Mr. Mahdi.

35.     Mr. Mahdi is entitled to declaratory relief and monetary damages against the Defendants based upon the Defendants' interference with Mr. Mahdi's right to be free from the use of excessive force under the United States Constitution.

WHEREFORE, Mr. Mahdi demands relief as follows:

36.     For a declaratory judgment that Defendants' conduct as alleged above violated Mr. Mahdi's constitutional rights as protected by the United States Constitution;

37.     For damages (special and general), in an amount to be established at trial but not less than $3 million dollars, based upon Defendants' violations of the rights of Mr. Mahdi under the United States Constitution;

38.     For an award of attorney fees and court costs under 42 U.S.C. § 1983 and § 1988; and

39.     For other such and further relief as the Court deems justified and proper under the facts and circumstances of this case.

/

/

/

/

/

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mr. Mahdi demands a jury trial on any claims so triable.

DATED this 15th day of April, 2020.

        NONPROFIT LEGAL SERVICES OF UTAH


         /s/ Aaron C. Garrett
        Aaron C. Garrett
        Nathan R. Garcia
        Mary Dewey
        *Attorneys for Plaintiff Thaer Mahdi*