IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THAER MAHDI,<br><br>Plaintiff,<br><br>v.<br><br>SALT LAKE CITY POLICE DEPARTMENT; UNIFIED POLICE DEPARTMENT; MICHAEL RAPICH; JED MILLER; JON THOMPSON; CHRIS SHELBY; and JOHN DOES 1–10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTIONS FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Case No. 2:20-cv-250<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Thaer Mahdi brought this action against the Salt Lake City Police Department, the Unified Police Department, and various employees of the Utah Highway Patrol, including Superintendent Michael Rapich, Officer Jed Miller, Officer Jon Thompson, Officer Chris Shelby, and John Does 1–10.[1] Mr. Mahdi sues under 42 U.S.C. § 1983, alleging that Defendants employed excessive force during an active-shooter incident and thus violated his substantive due process rights under the Fourteenth Amendment. Defendants move to dismiss. In addition to opposing Defendants' motions, Mr. Mahdi seeks leave to file a second amended complaint. The court grants the motions to dismiss and denies leave to amend.

---

[1] Although Mr. Mahdi sues the Salt Lake City Police Department, the police department is a governmental sub-unit of Salt Lake City Corporation, not a separate legal entity. *See e.g.*, *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985). Mr. Mahdi appears to recognize as much: his proposed amended complaint names the City, instead of its police department, as a defendant. *See* Dkt. No. 43-1 ¶ 3. Although the parties have not raised this issue, it appears that the Unified Police Department may similarly be a government sub-unit of Salt Lake County rather than a separate legal entity. *See Rohwedder v. Sperry*, 2:20-CV-81-DAK, 2021 WL 1873974, at *1 (D. Utah May 10, 2021). Because its disposition of this case does not turn on whether Mr. Mahdi has named the proper government entities as defendants, the court need not decide this issue.

## I.

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a plaintiff has met this standard, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017) (cleaned up).

Under Federal Rule of Civil Procedure 15(a)(2), a "party may amend its pleading with the court's leave," and "[t]he court should freely give leave when justice so requires." (Cleaned up.) "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (cleaned up). In opposing Mr. Mahdi's motions for leave to amend, Defendants argue primarily that the proposed amendment would be futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (cleaned up).

It follows that the same legal standard effectively governs both Defendants' motions to dismiss and Mr. Mahdi's motions for leave to amend. The court will accordingly consider all of the motions together, looking at both the First Amended Complaint—which is the current operative complaint—and the Proposed Second Amended Complaint to determine whether the

facts that Mr. Mahdi has alleged, combined with those he seeks leave to allege, suffice to state a claim on which relief can be granted.

## II.

The following background information is drawn from Mr. Mahdi's current operative complaint as well as his proposed amended complaint.

Mr. Mahdi is a tailor who owned and operated a tailoring business in Salt Lake City. *See* Dkt. No. 12 ¶ 13; Dkt. No. 43-1 ¶ 13. On April 8, 2019, a man named Harold Vincent Robinson "robbed two convenience stores in the Salt Lake Valley at gunpoint, and fired shots at the second convenience store." Dkt. No. 43-1 ¶¶ 14–15. Mr. Robinson then "led police on a car chase throughout the greater Salt Lake City area." Dkt. No. 12 ¶ 14; Dkt. No. 43-1 ¶ 14. During the chase, Mr. Robinson "traveled to several different locations in the Salt Lake Valley and fired rounds from a rifle out of his vehicle, including at the police units who were chasing him." Dkt. No. 43-1 ¶ 16. Mr. Robinson's vehicle eventually crashed into Mr. Mahdi's shop. *See* Dkt. No. 12 ¶ 14; Dkt. No. 43-1 ¶¶ 14, 17.

"Immediately after the crash," at least 15 police officers "collectively fired at least 196 rounds at Mr. Robinson and his vehicle, a substantial portion of which penetrated Mr. Mahdi's store." Dkt. No. 43-1 ¶¶ 18–19, 32; *see also* Dkt. No. 12 ¶¶ 15–16, 28. "[V]ideo footage of the incident posted to social media" confirms that officers "began firing within 1-2 seconds upon arriving on the scene and continued to fire indiscriminately for approximately 20 seconds." Dkt. No. 12 ¶ 17; Dkt. No. 43-1 ¶ 20. Fortunately, Mr. Mahdi "was not himself struck by one of the dozens of bullets that entered his shop"; his shop, however, was "torn to shreds" and Mr. Mahdi has "suffered from tremendous psychological distress" after the incident. Dkt. No. 12 ¶¶ 15, 29; Dkt. No. 43-1 ¶¶ 18, 33.

On April 15, 2020, Mr. Mahdi brought this action. Defendants subsequently each filed a motion to dismiss. After the court held a hearing on the motions to dismiss, Mr. Mahdi sought leave to file an amended complaint.

### III.

Mr. Mahdi alleges that the large number of shots Defendants fired at Mr. Robinson and into Mr. Mahdi's shop after Mr. Robinson crashed into the shop constituted excessive force and thus violated Mr. Mandi's substantive due process rights under the Fourteenth Amendment. *See* Dkt. No. 12 ¶¶ 1, 21, 35–43; Dkt. No. 43-1 ¶¶ 1, 25, 39–47. Considering all of Mr. Mahdi's allegations—both those in the current operative complaint and those in the proposed amended complaint—the court concludes that Mr. Mahdi fails to state a claim for violation of his substantive due process rights. The court accordingly grants Defendants' motions to dismiss and denies Mr. Mahdi's motions for leave to amend.

### A.

Defendants contend that the individual Defendants, including Superintendent Rapich, Officer Miller, Officer Thompson, and Officer Shelby, are entitled to qualified immunity. To overcome this defense, Mr. Mahdi must establish that these individuals "violated a federal statutory or constitutional right" and that "the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (cleaned up). When, as here, qualified immunity is raised in a motion to dismiss, the court accepts the well-pleaded facts contained in the complaint as true and construes them in the light most favorable to the plaintiff. *See, e.g., Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Mr. Mahdi must accordingly allege facts that support a reasonable inference that the individual Defendants violated his Fourteenth Amendment "right to

be free from the use of excessive force," and he must also establish that this right was clearly established when the alleged unconstitutional conduct occurred.

For the following reasons, the court concludes that the individual Defendants' actions did not violate Mr. Madhi's Fourteenth Amendment rights. *A fortiori*, these actions did not violate his clearly established rights. The individual Defendants are thus entitled to qualified immunity.

## 1.

Controlling precedent establishes that "[s]ubstantive due process analysis is appropriate in cases that involve excessive force where a specific constitutional provision—such as the Fourth or Eighth Amendment—does not apply." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)). Because Mr. Mahdi was not himself searched or "seized within the meaning of the Fourth Amendment," and because he was not a prisoner protected by the Eighth Amendment from cruel and unusual punishments, it is thus appropriate to analyze his excessive force claim "under the Fourteenth Amendment Due Process Clause." *Id.*

To state a claim that the individual Defendants violated his right to substantive due process, Mr. Mahdi must allege conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento*, 523 U.S. at 847 n.8; *see also id.* at 846 (describing "the cognizable level of executive abuse of power" that violates substantive due process "as that which shocks the conscience"). The Supreme Court has "repeatedly emphasized that only the most egregious official conduct" meets this standard. *Id.* at 846.

In determining whether executive government action "shocks the conscience," the Tenth Circuit has applied two different standards, depending on the situation. On one hand, when "a government official has enough time to engage in 'actual deliberation,' conduct that shows

'deliberate indifference' to a person's life or security will shock the conscience and thereby violate the Fourteenth Amendment." *Perez v. Unified Govt. of Wyandotte County/Kansas City, Kan.*, 432 F.3d 1163, 1166 (10th Cir. 2005) (quoting *County of Sacramento*, 523 U.S. at 851). On the other hand, "[w]hen governmental officials face a situation 'calling for fast action,' only official conduct done with an intent to harm violates the Fourteenth Amendment." *Id.* (quoting *County of Sacramento*, 523 U.S. at 853); *see also County of Sacramento*, 523 U.S. at 849 (explaining that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level").

## 2.

Mr. Mahdi argues that the deliberate indifference standard applies here. The court disagrees.

The Supreme Court has held that the "deliberate indifference" standard "is sensibly employed only when actual deliberation is practical." *County of Sacramento*, 523 U.S. at 851. And "actual deliberation does not mean 'deliberation' in the narrow, technical sense in which it has sometimes been used in traditional homicide law." *Id.* at 851 n.11 (cleaned up). Instead, "liability for deliberate indifference rests upon the luxury enjoyed of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Id.* at 853 (cleaned up). By contrast, the Supreme Court has held that the deliberate indifference standard does not apply in emergency situations, such as high-speed police chases and prison riots, where "unforeseen circumstances demand an officer's instant judgment." *Id.*

In his brief opposing the motions to dismiss, Mr. Mahdi argued that the individual Defendants and other police officers involved in the shooting had time to deliberate between

when Mr. Robinson crashed into Mr. Mahdi's shop and when they began to fire. *See* Dkt. No. 30 at 8–10. The court disagrees for at least four reasons.

First, the emergency here involved not only a car chase, but also an active shooter. The police officers were responding to the threat posed by an individual, Mr. Robinson, who had just robbed two convenience stores at gunpoint, firing shots at one of these stores, and who had then "fired more shots from his weapon" as he traveled around Salt Lake City. *See* Dkt. No. 43-1 ¶ 15. And after the officers "began to chase Mr. Robinson as he fled in his pickup truck," Mr. Robinson continued to fire "rounds from a rifle out of his vehicle, including at the police units who were chasing him." *Id.* ¶¶ 15–16. The dangerous and rapidly evolving circumstances demanding "instant judgment" thus did not end with the crash but continued until the threat posed by the active shooter was neutralized. *County of Sacramento*, 523 U.S. at 853.

Second, contrary to the arguments Mr. Mahdi made in his brief, neither the current operative complaint nor the proposed amended complaint alleges that the individual Defendants or any of the officers at the scene had any time to deliberate between when Mr. Robinson crashed into the store and when they started firing. To the contrary, Mr. Mahdi alleges that "[i]mmediately after the crash, an incredible hail of gunfire engulfed Mr. Mahdi and his establishment," Dkt. No. 12 ¶ 15; Dkt. No. 43-1 ¶ 18, and that "at least 15 different officers . . . immediately began firing their weapons at Mr. Robinson and into Mr. Mahdi's business for approximately 20 seconds," Dkt. No. 12 ¶ 28; Dkt. No. 43-1 ¶ 32.

Third, even if there was a brief break in the dangerous and rapidly unfolding events after Mr. Robinson crashed into Mr. Mahdi's store and before the police officers began to fire, the break appears to have been far too short for "actual deliberation." After all, "actual deliberation" means having "more than . . . a few seconds to think." *Perez*, 432 F.3d at 1167. Indeed, the Tenth

7

Circuit has indicated that whether an officer had an opportunity to deliberate is subject to genuine dispute only when the time for deliberation is "greater than three but less than twenty-four minutes." *Waugh v. Dow*, 617 Fed. Appx. 867, 873 (10th Cir. 2015). Here, the officers could not have had more than a few seconds to react to the crash before they began shooting—let alone more than three minutes for "actual deliberation."

Finally, Mr. Mahdi's complaint specifically discusses video footage of the shooting. *See* Dkt. No. 12 ¶ 17; Dkt. No. 43-1 ¶ 20. The parties have identified the footage to which the complaint refers, and at the hearing on the motions to dismiss, Mr. Mahdi's counsel agreed that the court may consider the footage in deciding these motions. *See* KUTV.COM, *Man Dead After Shooting, Pursuit in Salt Lake* (April 8, 2019), https://kutv.com/news/local/shots-fired-at-matheson-courthouse-police-responding; NBC Nightly News, *Man Dead After High-Speed Chase in Utah* (April 8, 2019), https://www.youtube.com/watch?v=D2lQGspwIho; *cf. GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (explaining that if a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss"). The video footage confirms that the police officers did not have time for "actual deliberation." First, the video footage makes clear that Mr. Robinson was not incapacitated by the crash. To the contrary, he was able to get out of his car—presenting a risk of flight, further violence, or both. Second, as Mr. Mahdi acknowledges, "the video footage demonstrates that officers began firing within 1-2 seconds upon arriving on the scene." Dkt. No. 12 ¶ 17; Dkt. No. 43-1 ¶ 20. Third, the video footage shows that even after the officers ceased firing, they remained in high alert as they cautiously approached Mr. Robinson's truck with weapons drawn. Indeed, it appears from the manner in which the officers opened the truck door that they were

concerned that another shooter or some other danger might be in the truck—after quickly opening the door, the officers jumped back defensively. The video footage thus makes clear that the officers still believed they were responding to dangerous and unforeseen circumstances potentially requiring instant judgments even *after* they stopped firing.

At the hearing on the motions to dismiss, Mr. Mahdi also argued that even though the police officers were engaged in hot pursuit of an active shooter, "actual deliberation" was still practical because there were at least 15 officers involved in the chase, with still more officers at police headquarters. Given the number of officers involved, Mr. Mahdi argued that someone must have had time to actually deliberate and form a strategy.

But it is not uncommon for high-speed police chases and other similar emergencies to actively involve multiple police officers. *See e.g.*, *County of Sacramento*, 523 U.S. at 837 ("two police cars"); *Bingue v. Prunchak*, 512 F.3d 1169, 1171 (9th Cir. 2008) ("at least a dozen units and a helicopter"). And in almost every such case, police officers at headquarters can be presumed to have been involved or at least available.

Nevertheless, Mr. Mahdi fails to identify—and the court has not independently located—any case holding or suggesting that the opportunity for "actual deliberation" turns on the number of police officers involved in responding to an emergency. Nor does this court find Mr. Mahdi's argument persuasive. Even if a large number of police officers were involved in the response to the emergency in this case, the fact remains that they were in hot pursuit of an active shooter. The officers pursuing Mr. Robinson simply did not have time to stop and deliberate. And even if someone back at headquarters did in theory have time to deliberate, the court finds singularly unreasonable and unrealistic Mr. Mahdi's suggestion that it would have been practical for the officers in hot pursuit of Mr. Robinson to somehow make time to keep headquarters

continuously apprised of all of the rapidly unfolding circumstances necessary to form a deliberate and effective strategy, to receive and process any strategy that headquarters might decide upon, and then to implement that strategy—all in real time while responding to an active and dangerous emergency.

For all of these reasons, the court concludes that the "deliberate indifference" standard does not apply to the facts alleged here. *Cf. County of Sacramento*, 523 U.S. at 851.

**3.**

The court instead concludes that this case is governed by "[t]he intent to harm standard," which applies when, as here, "decisions must be made 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Perez*, 432 F.3d at 1167 (quoting *County of Sacramento*, 523 U.S. at 853). Under this standard, liability turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *County of Sacramento*, 523 U.S. at 853 (cleaned up).

In addition, the Tenth Circuit has clarified that the individual bringing the substantive due process claim under this standard—and here that is Mr. Mahdi, not Mr. Robinson—must show that the government defendants intended to harm the claimant specifically. *See Childress v. City of Arapaho*, 210 F.3d 1154, 1158 (10th Cir. 2000). As that court explained, although "the substantive due process standard of culpability for an officer involved in a police pursuit applies whether the claimant is a police suspect or an innocent victim," the "touchstone is whether the officers acted with an intent to harm the participants or to worsen their legal plight." *Id.* at 1157–58 (cleaned up). In *Childress*, for example, the plaintiffs were hostages taken by individuals fleeing from the police after escaping from prison, and the police officers, although aware that plaintiffs were in the fugitives' vehicle, nevertheless shot at the vehicle in an attempt to stop the

fugitives. *See id.* at 1155–56. Although the shots fired by the police struck each plaintiff multiple times, *see id.,* the Tenth Circuit held that summary judgment was properly granted against the plaintiffs because they had failed to "present specific facts suggesting that the officers harbored an intent to harm *them*." *Id.* at 1158 (emphasis added).

In this case, it is obvious that the individual Defendants and other police officers intended to harm Mr. Robinson—although, under the circumstances, they can hardly be said to have acted with "inten[t] to injure [Mr. Robinson] *in some way unjustifiable by any government interest.*" *County of Sacramento*, 523 U.S. at 849 (emphasis added). But Mr. Mahdi has failed to allege any facts that would support a reasonable inference that the police intended to harm *him*.

To be sure, Mr. Mahdi alleges that the "excessive number of bullets fired by the officers involved . . . demonstrates that the officers and UHP patrolmen intended to cause harm unrelated to the legitimate objective of arresting Mr. Robinson." Dkt. No. 43-1 ¶ 24. But even if the officers fired more bullets than necessary, that does not support a reasonable inference that the officers intended to harm *Mr. Mahdi*. Indeed, Mr. Mahdi acknowledges that the officers "collectively fired at least 196 rounds *at Mr. Robinson and his vehicle*." *Id.* ¶ 19 (emphasis added); *see also* Dkt. No. 12 ¶ 16. Perhaps Mr. Mahdi's allegations support a reasonable inference that the officers acted in reckless disregard of the risk that their shots could damage the shop behind Mr. Robinson and his truck or injure innocent bystanders inside the shop. But while such reckless disregard might violate substantive due process under the deliberate indifference standard that would apply if the officers had had the luxury of deliberation, it does not amount to the "inten[t] to injure [Mr. Mahdi] in some way unjustifiable by any government interest" that would be required to establish that the officers' response to the dangerous and unfolding emergency posed by Mr. Robinson was "so egregious, so outrageous, that it may fairly be said to

shock the contemporary conscience." *County of Sacramento*, 523 U.S. at 847, 849. And because the individual Defendants' conduct did not violate Mr. Mahdi's Fourteenth Amendment rights at all, *a fortiori* it did not violate his clearly established rights.

The individual Defendants are accordingly entitled to qualified immunity and Mr. Mahdi's claim against them must be dismissed.

### B.

It is well settled that "[a] municipality may not be held liable [under § 1983] where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Because Mr. Mahdi does not allege any constitutional violations by Superintendent Rapich, Officer Miller, Officer Thompson, Officer Shelby, or any other police official, it follows that neither the Salt Lake City Corporation nor the Unified Police Department can be held liable under Section 1983. *See Hinkley v. Salt Lake City Corp.*, 426 F. Supp. 3d 1207, 1220 (D. Utah 2019). Mr. Mahdi's claim against the municipal Defendants thus must be dismissed as well.

### C.

Because Mr. Mahdi's proposed amended complaint, like the current operative complaint, "would be subject to dismissal," *Anderson*, 499 F.3d at 1238, the court denies Mr. Mahdi's requests for leave to amend as futile.

\*   \*   \*

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED**. Plaintiff's motions for leave to file a second amended complaint are **DENIED**.

**IT IS SO ORDERED.**

DATED this 21st day of July, 2021.

BY THE COURT:

Howard C. Nielson, Jr.
United States District Judge